# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EMMA REZA,<br><br>        Plaintiff,<br><br>        v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>        Defendant. | Case No. 12 C 5736<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Defendant, Costco Wholesale Corporation ("Costco"), is a membership warehouse club, with hundreds of locations worldwide, one of which is located on Clybourn Avenue in Chicago's Lincoln Park neighborhood. Each warehouse is operated by a store manager. The Plaintiff, Emma Reza ("Reza"), was an employee of Costco at the Clybourn Avenue warehouse from November 16, 2010 until October 18, 2013 when she was terminated. Her duties included working with cashiers by helping lay member merchandise on the conveyor belt, packing member orders in boxes, and reloading the orders onto separate carts or conveyances after the merchandise had been scanned by the cashier. She also did a myriad of other tasks in the warehouse.

On June 4, 2011, Reza suffered an injury at work. She apparently was unable to return to work for medical reasons so she

was terminated on October 18, 2013.  She pursued a workers' compensation claim as a result of her injury.  She does not argue that her termination was unlawful.

Each employee of Costco, including Reza, receives a document entitled "Employee Agreement" (the "Agreement") upon hire.  According to its Table of Contents, the Agreement covers such subjects as personnel procedures and policies, employee classifications, compensation and payroll, benefits, medical and family leave, and career opportunities.  For the purposes of this case, the Section entitled "Personnel Procedures and Policies is the relevant section.  And among this Section, the Subsections entitled "Open Door Policy/Resolution of Disagreements" (Section 2.1) and "Anti-Harassment, Discrimination or Retaliation" (Section 2. 4) are the relevant parts.

The Open Door Policy section applies to "work related disagreements" and instructs the employee that they have a number of options concerning whom to contract in case of a workplace disagreement starting with the employees own Supervisor/Manager, and depending on an ascending levels to the Location Manager, the Regional/Senior Executive Vice President, Home Office Human Resources Department, and finally the Ombud's Office.  The whole purpose of this section is to assist Costco employees in problem resolution.  The Agreement contains an 800 number for use by the employee in reporting.

In addition to the foregoing, Costco's anti-harassment policy specifically prohibits "all forms of harassment based on any protected status, including race, color, national origin, ancestry, sex, sexual orientation, gender identity, religion, age, pregnancy, disability, work-related injury, covered veteran status, political ideology, genetic information, marital status, or . . . any other protected status." Section 2.5, Reporting Harassment, Discrimination, or Retaliation, specifically requires the employee to report any instances of harassment. The reporting requirement includes conduct involving "anyone with whom an employee comes into contact as part of the employee's job: managers, supervisors, co-workers, members, independent contractors, supplies or others." The employee is insured that any such complaints will be kept confidential, except as necessary in the pursuance of an investigation. The Section ends with the injunction: "Again you are required to report all incidents of harassment, discrimination, retaliation or other inappropriate behavior as soon as possible."

Reza received a copy of the Agreement during her new hire orientation. She initially received an English version but later requested and received a Spanish version. She understood that the Agreement contained Costco's employment policies. She was further aware of the 800 number which she could use in reporting.

Between July 2006 and April 2012, Brian Thomas ("Thomas") was the General Manager at the Clybourn warehouse. Reza claims that on

approximately five (5) occasions during the Spring of 2011 Thomas made unwelcome physical contact with her. The first occasion was in April 2011. She had brought Thomas a letter regarding some problems she had with two female supervisors, and a few days later she met with Thomas in his office to discuss the letter. At the conclusion of the meeting she reached out her hand to Thomas, who took it in his hand and rubbed it for a few seconds and made the statement that he liked her. She made no complaint.

A few weeks later, while she was working on the floor, Thomas placed his hands on her shoulders for a few seconds and smiled at her. No words were exchanged. She again made no complaint. Toward the end of May 2011, while Reza was assisting at the cash register, Thomas placed his hands on her shoulders and walked her to his office. His hands were on her shoulders while they took about three or four steps. While inside the office he grabbed her shoulders and maneuvered her to a chair where she was seated. She does not recall what they talked about in the office. She did, however, complain to Thomas about the touching, by telling him that it was "unethical."

In early June, just prior to her work injury, Reza went to Thomas to complain about the conduct of one of her female supervisors. At her request they spoke outside his office. When Thomas appeared not to be overly sympathetic to her, she threatened to go over his head to Human Resources with her complaint. She

then testified that he, with a "sarcastic smile," put his had on her shoulder and told her to relax and told her to be careful what she was going to do and again told her that he liked her. He then touched her right breast with his open hand for about two seconds and then touched her left breast with his open hand for about one second. She made no complaint.

Her final allegation of physical contact occurred in July 2011. While she was off work as a result of her injury, she went to the warehouse to look for a co-worker who allegedly witnesses the June contact. While looking at the work schedules in the lunch room, Thomas approached her from behind and rubbed her back and shoulder for one or two seconds. He said "hi" and asked her if she could return to work. She angrily told him not to touch her again.

Her other complaints included several other statements by Thomas that he "liked her," and questions he asked her, which she considered personal, such as what kind of wine she liked, what was her favorite color, and how did she meet her husband. She testified that at first she did not believe these comments were sexual in nature but on reflection she thought that they were. Despite her concerns about Thomas, she continued to shop at the Clybourn Costco store.

Reza did not report any of these occurrences to Costco other than if scolding Thomas on the above two occasions can be considered reporting. The only person she told about her

complaints was after the fact to a co-employee, Ann Krause, on an occasion while she was shopping at Costco in July 2011. Krause was a co-employee and not a supervisor. Costco did not hear about the alleged harassment until it received a copy of her charge of discrimination with the Illinois Department of Human Rights. She did testify that her husband attempted to contact Costco's Human Resources Department but he refused to leave contact information so no one responded to his call. Costco immediately initiated an investigation. As a part of the investigation, Costco's counsel informed Reza that an investigation was underway and attempted to interview her. She repeatedly refused to participate. Because of her refusal to participate, the charges were not sustained.

Reza filed her charge with the Illinois Department of Human Rights on August 2, 2011, and she received a Right-to-Sue letter on June 15, 2012. On July 20, 2012, she filed a single count Complaint against Costco, alleging sexual harassment in violation of Title VII. Costco has moved for summary judgment on two grounds: first, that she cannot show that her work environment, sexual harassment claim was subjectively hostile or sufficiently severe or pervasive; and, second, Costco has established as a matter of law the affirmative defense of reasonable case to prevent and correct promptly any sexually harassing behavior.

The Court finds that Reza has established neither a subjectively nor an objectively hostile work environment at Costco.

Because of this finding, the Court need not reach Costo's affirmative defense of reasonable care. The Court therefore grants Costco's Motion for Summary Judgment.

## II. DISCUSSION

To withstand summary judgment a plaintiff must prove that, first, she was subject to unwelcome harassment; second, the harassment was based on her sex; third, the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment that affected seriously the psychological well-being of the plaintiff; and, forth, there is a basis for employer liability. *McPherson v. City of Waukegan,* 379 F.3d 430, 438 (7th Cir. 2004). The severity and pervasiveness of the harassment must actually alter the conditions of a plaintiff's employment and create an abusive work environment and it must be both objectively and subjectively offensive, *i.e.,* one that a reasonable person would find both hostile or abusive and one that the plaintiff did in fact perceive to be so. *Id.*

Here, Reza has failed to establish either objective or subjective hostility. First, while perhaps boorish, Thomas only touched Plaintiff's body four times, once on the hands, two on her shoulders, and once on her breasts. Her other complaints involve rather isolated comments such as he "liked her," the type of wine she preferred, and her favorite color. If she had felt that these actions were truly offensive to her, she would have complained to

someone other than Thomas.  The only evidence that she actually complained to anyone involved with Costco were her angry responses to Thomas on two occasions, the last of which was after she had ceased work as a result of her injury.  While an argument can be made that Thomas might have been expected to continue or escalate his misconduct if she had remained at Costco, the fact of the matter is that she had no further contact with Thomas after her last complaint in July 2011.  Perhaps this is solely because she did not return to work but this requires speculation and a claim of hostile work environment based on conduct that might have occurred.  Further evidence that Reza did not consider the environment hostile within the Title VII definition is that she did not complain to anyone (other than Thomas) while she was working at Costco.  She was aware of the correct procedure to be followed because she acknowledged receiving and reading the reporting requirements contained in the Agreement, which she utilized on the occasion where she complained to Thomas about the incident of racial hostility of another Costco employee.

As far as the objective element of a hostile work environment, there are a host of cases from the Seventh Circuit and this district that found the objective element lacking on facts either similar or more severe than faced by Reza.  *See, Weiss v. Coca-Cola Bottling Co. Of Chicago,* 990 F.2d 333 (7h Cir. 1993); *Strickland v. First Bankshares, Inc.,* No. 2:06-cv-199, 2008 U.S. Dist. LEXIS

31549 (N.D.Ind. Apr. 15, 2008); *Mosher v Dollar Tree Stores, Inc.,* No. 98 C 2295 U.S. Dist. LEXIS 93 (N.D.Ill. Jan. 28, 2000); *Kelly v. United Road Towing Service,* 2009 U.S. Dist. LEXIS 19536 (N.D.Ill. March 12, 2009). Consequently, the conduct of Thomas was neither subjectively hostile to Reza nor objectively hostile under Title VII law.

Since the Court did not find a hostile environment, the Court need not decide whether the anti-harassment procedures established by Costco in its Employee Agreement were adequate to provide Costco with the defense of reasonable care as established by the Supreme Court in *Burlington Industries v. Ellerth,* 524 U.S. 742 (1998).

### III. CONCLUSION

For the reason stated herein, Costco's Motion for Summary Judgment is granted. The case is dismissed with prejudice.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

Date:9/30/2014